IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

CHESTER ENNIS,            §
    Petitioner,          §
                  §
                  §          **EP-06-CA-0016-PRM**
v.                       §          **EP-02-CR-1430-PRM**
                  §
UNITED STATES OF AMERICA, §
    Respondent.          §

## MEMORANDUM OPINION AND ORDER

Before the Court is Petitioner Chester Ennis's ("Ennis") *pro se* "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" [Docket No. 278], filed on January 11, 2006, and "Memorandum in Support" [Docket No. 282], filed on February 23, 2006 (collectively, "Motion to Vacate"). Therein, Ennis challenges his conviction and concurrent life sentences for narcotics trafficking. In its "Response to Motion to Vacate" ("Response") [Docket No. 287], filed on May 9, 2006, Respondent (hereafter, "the Government") asserts Ennis's claims lack merit and the Court should deny his Motion to Vacate. Ennis's "Traverse to the Government's Response" [Docket No. 288] restates and clarifies his claims. After reviewing the record and for the reasons discussed below, the Court concludes Ennis has failed to establish his entitlement to relief pursuant to § 2255 and will accordingly dismiss his civil cause with prejudice. The Court will additionally deny Ennis a certificate of appealability.

I.      **BACKGROUND**

    *A.*     *United States v. Ennis, Criminal Cause No. EP-02-CR-1430(1)-PRM*

An Ennis acquaintance, Arthur Portillo ("Portillo"), approached a Drug Enforcement Agency ("DEA") agent and advised her that Ennis sold large quantities of drugs from his home.

The DEA agent responded by asking Portillo to gain Ennis's confidence and coordinate arrangements with Ennis to purchase and transport narcotics. Portillo thereafter approached Ennis and initiated negotiations to buy one kilogram of cocaine. Portillo, a truck driver, also told Ennis he could haul marijuana in his tractor-trailer rig.

The first transaction between Portillo and Ennis occurred after the DEA agent affixed a recording device to Portillo's person and provided Portillo with $15,000 in cash to purchase cocaine. Portillo subsequently met with Ennis and exchanged the money for one kilogram of cocaine.

DEA agents also intercepted various telephone conversations indicating Ennis would ship 700 pounds of marijuana to Minnesota or Ohio. The day after the telephone intercepts, agents observed an Oldsmobile Cutlass enter Ennis's property in the morning and again in the afternoon. El Paso County Sheriff's Deputies later stopped the Cutlass for a defective tail light violation. Deputies noted a strong odor of marijuana permeating from the car. A subsequent consent search of the vehicle revealed a small quantity of marijuana stems and seeds under the back seat. Deputies also observed loose door panels inside the car, a characteristic consistent with drug smuggling.

Deputies then stopped Ennis's pickup truck for a license plate violation. They arrested the driver, Ennis, when a record check revealed an outstanding arrest warrant for driving while intoxicated. A narcotic detection dog at the scene alerted to six boxes in the truck's bed. Subsequent testing revealed the boxes contained cocaine and marijuana residue.

Upon his release from jail later that day, Ennis called his wife and instructed her to put all incriminating evidence into an envelope, address it to their home, and place it in a mailbox.

-2-

About two hours later, a DEA surveillance camera recorded a person leaving Ennis's residence, walking to the curb, and placing a large envelope in the mailbox. A postal inspector subsequently removed two large envelopes from the mailbox, and a narcotic detection dog alerted to the packages. Postal authorities obtained a search warrant for the envelopes. The search revealed $10,845 in cash, 14.5 grams of cocaine, drug paraphernalia, and other items.

The following week, Ennis approached Portillo and asked him to transport 30 kilograms of cocaine to New York City. Portillo told Ennis he could depart the next day. When Portillo arrived at Ennis's residence on the following afternoon, Ennis gave him a Gateway computer box. After leaving Ennis's house, Portillo met with DEA agents who opened the Gateway computer box and found 30 kilograms of cocaine inside.

Portillo, accompanied by DEA agents, proceeded to Manhattan and called Ennis for further instructions. Ennis gave Portillo contact information for a New York buyer. Portillo met with the buyer and delivered two duffle bags containing DEA-provided fake cocaine. The buyer gave Portillo $27,000 in cash in exchange for the duffle bags. After returning to El Paso, Portillo turned the money over to Ennis.

Several months later, federal authorities arrested Ennis at his home. At the time of his arrest, Ennis told the arresting agents that 500 pounds of marijuana were hidden inside his house. The agents obtained a warrant to search the house and discovered approximately 700 pounds of marijuana in a closet.

On September 18, 2002, a federal grand jury sitting in the Western District of Texas, El Paso Division, returned a nine-count superseding indictment charging Ennis, his wife Sheila Ennis, his son William "Billy" Ennis, his neighbor Alberto Segura, and others with:

(1) conspiracy to possess with intent to distribute both marijuana and cocaine, in violation of 21 U.S.C. §§ 841 *et seq.* and 846 ("Count One"); (2) possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2 ("Count Two"); (3) possession with intent to distribute more than 100 kilograms of marijuana, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2 ("Count Three"); (4) possession with intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii) ("Count Four"); (5) using a cellular phone in an effort to conspire to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 843 and 18 U.S.C. § 2 ("Count Five"); (6) using a telephone to facilitate a conspiracy to distribute cocaine, in violation of 21 U.S.C. § 843 and 18 U.S.C. § 2 ("Count Six"); (7) using a cellular phone to conspire to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 843 and 18 U.S.C. § 2 ("Count Seven"); (8) using a cellular telephone to conspire to possess with intent to distribute marijuana, in violation of 21 U.S.C. § 843 and 18 U.S.C. § 2 ("Count Eight"); and (9) possession with intent to distribute more than 100 kilograms of marijuana, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2 ("Count Nine").

After an eight-day trial ending with a verdict on May 7, 2003, a jury found Ennis guilty on all counts with which he had been charged. The Court sentenced Ennis to a term of life imprisonment as to Counts One, Two, Three, Four, and Nine, and to a term of 96 months as to Count Six. The sentences in Counts Two, Three, Four, Six and Nine were to run concurrently with the life sentence imposed on Count One. The Court additionally directed Ennis to pay a $5,000 fine and a $600 special assessment. Ennis appealed.

B.      *United States v. Segura, No. 03-50841, 122 Fed. Appx. 768 (5th Cir. 2005)*

In his appeal, Ennis raised two issues.  First, Ennis questioned whether the prosecution presented sufficient evidence to convict him for conspiracy.  Second, Ennis asserted there was a prejudicial variance between the Government's indictment and the evidence presented at trial which, according to Ennis, indicated there were multiple conspiracies.  After reviewing the case, the Court of Appeals for the Fifth Circuit held "a rational jury could have found that the necessary elements for conspiring to possess with intent to distribute were present."[1] Additionally, the Fifth Circuit found "it was clearly reasonable to conclude that the defendants were members of a single conspiracy to distribute narcotics."[2]  Accordingly, the Fifth Circuit affirmed Ennis's conviction on direct appeal on January 27, 2005.[3]

C.      *Ennis's Motion to Vacate*

The Court has read Ennis's Motion to Vacate liberally, pursuant to *Haines v. Kerner*,[4] and understands him to raise the following claims for relief.

Claim One:      Ennis's defense counsel, Robert Ramos ("Ramos"), failed to adequately investigate facts regarding a proposed plea agreement that could have resulted in Ennis receiving a fifteen year sentence.

Claim Two:      Ramos misinformed Ennis that he could not argue entrapment without going to trial.

---

[1] *United States v. Segura*, 122 Fed. Appx. 768, 777 (5th Cir. 2005).

[2] *Id.* at 779.

[3] *Id.* at 781.

[4] 404 U.S. 519, 521 (1972).

Claim Three:   Ramos should have argued that the prosecutor had a conflict of interest.

Claim Four:    Ramos should have pursued a counter offer when the Government offered

Ennis and his co-defendants an all-or-nothing plea bargain.

Claim Five:    Ramos should have negotiated a plea offer with the prosecutor's superiors

at the Department of Justice in Washington, D.C.

Claim Six:     The prosecutor rendered ineffective assistance by acting in bad faith, and

used improper and illegal coercion tactics when he asked that all

defendants plead guilty in order to benefit from a plea agreement.

Claim Seven:   Ramos failed to request a jury instruction regarding entrapment.

Claim Eight:   Ramos failed to argue entrapment at sentencing.

D.     *The Government's Response*

1.     A failure to investigate the benefits of a proffered plea agreement does not
provide a basis for an ineffective assistance of counsel claim.

Ennis claims Ramos provided ineffective assistance when he failed to investigate and

counter the Government's plea offer. In its Response, the Government first asserts that, in order

to prevail on an inadequate investigation claim, a petitioner must first present the exculpatory

evidence such an investigation would have uncovered.[5] Ennis, the Government notes, has failed

to provide this evidence. Additionally, the Government claims "[t]here is no constitutional right

to a plea bargain, and the prosecutor has the discretion either to bargain or go to trial."[6]

---

[5] *United States v. Lewis*, 786 F. 2d 1278, 1283 (5th Cir. 1986); *Rupert v. Johnson*, 79 F. Supp. 2d
680 (W.D. Tex. 1999).

[6] *United States v. Lopez*, 979 F. 2d 1024, 1036 (5th Cir. 1992) (quoting *United States v. Rankin*,
572 F. 2d 503 (5th Cir. 1978).

Accordingly, the Government argues that even if Ramos failed to investigate the benefits of a proposed plea agreement, his failure does not provide a basis for § 2255 relief.

      2.     A defendant must raise an entrapment affirmative defense at trial.

Ennis alleges the Government's informant contacted him and actively participated in the unlawful activities. Ennis claims Ramos erred when he told Ennis he could not raise an entrapment defense without going to trial. The Government explains "[e]ntrapment is an affirmative defense with two related elements: government inducement of the crime and a lack of predisposition on the part of the defendant to engage in the criminal conduct."[7] In order to be entitled to an entrapment defense, a "defendant must make an initial showing that he lacked the predisposition to commit the crime."[8] "At this juncture the burden shifts to the government to prove beyond a reasonable doubt that the defendant was disposed to commit the offense prior to first being approached by government agents."[9] Ramos therefore accurately informed Ennis he could only assert an entrapment defense at trial. Ramos's correct advice, the Government argues, cannot support an ineffective assistance of counsel claim.[10]

      3.     A petitioner must identify a conflict of interest with specificity before he may obtain § 2255 relief.

Ennis alleges in his Motion to Vacate that Ramos should have argued a conflict of interest existed. In his Reply, Ennis claims the conflict arose from the prosecution representing

---

[7] *United States v. Wise*, 221 F.3d 140, 154 (5th Cir. 2000).

[8] *United States v. Smith*, 481 F.3d 259, 262-63 (5th Cir. 2007).

[9] *United States v. Bradfield*, 113 F.3d 515, 522 (5th Cir. 1997).

[10] *Smith v. Puckett*, 907 F.2d 582, 585 n.6 (5th Cir. 1990).

only the government's interests in this matter.[11]  Ennis asserts, "the prosecution has a duty to

represent all Americans, including the defendant . . . [t]he conflict is clear, in that the prosecution

has represented the [G]overnment's interest."[12]  The Government responds that Ennis fails to

provide specific facts to support his claim.  The Government argues the Court should accordingly

deny Ennis's conclusory allegation.[13]

    4.    <u>Failure to obtain a plea agreement is not evidence of ineffective assistance.</u>

Ennis avers Ramos should have countered the Government's fifteen-year offer and

obtained a lesser sentence.  The Government reasserts its contention that a failure to obtain a plea

agreement is not a basis for an ineffective assistance claim because the Government is not

obligated to present one.[14]  Further, the Government claims the record will not support the notion

that the prosecutor would have been receptive to Ramos's counter-offer.[15]  Thus, without more,

Ramos's alleged failure to pursue a counter-offer cannot support a successful ineffective

assistance claim.

    5.    <u>The Department of Justice procedures provide no mechanism for
           overruling a plea offer.</u>

Ennis suggests Ramos should have gone over the local prosecutor's head and obtained a

plea agreement from the Department of Justice.  The Government first reasserts its contention

---

[11] Pet'r's Traverse to Gov't's Response, Docket No. 288, at 4.

[12] *Id.*

[13] *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (emphasizing that mere conclusory allegations do not raise constitutional issues in habeas proceedings).

[14] *Lopez*, 979 F. 2d at 1036.

[15] *Burger v. Kemp*, 483 U.S. 776, 785 (1987).

that a failure to obtain a plea agreement is not a ground for an ineffective assistance claim.[16]  The

Government then notes Ennis fails to provide evidence that a higher authority at the Department

of Justice would have granted him leniency.  The Government accordingly argues the Court

should deny Ennis's claim.

6.  A prosecutor may make a defendant's plea agreement contingent upon the guilty pleas of his co-defendants.

Ennis claims the proffered plea agreement pitted him against his son and would have

resulted in his coerced confession.  This, according to Ennis, violated the prosecutor's

constitutional duty to provide him with effective assistance.  The Government contends a

prosecutor is not obligated to render effective assistance to a defendant; a prosecutor only owes a

defendant a duty to act in good faith and not violate his rights.  Additionally, a prosecutor is free

to make a defendant's plea agreement contingent upon the guilty pleas of his co-defendants.[17]

Moreover, in the instant case, Ennis remained free to plead to the superceding indictment;

instead, he elected to go to trial.  The Government suggests the Court should reject Ennis's

"novel argument" because it lacks merit.

---

[16] *Lopez*, 979 F. 2d at 1036.

[17] *See United States v. Gonzalez-Vazquez*, 219 F.3d 37, 43 (1st Cir. 2000) (explaining that a "package deal" would not violate the defendants constitutional rights); *United States v. Seligsohn*, 981 F.2d 1418, 1426 (3rd Cir. 1992) ("Package deal plea bargains, in which a prosecutor makes an agreement with one defendant contingent upon a co-defendant also pleading guilty, are permissible provided that the defendant's decision to forego a trial is otherwise voluntary."); *United States v. Marquez*, 909 F.2d 738 (2nd Cir. 1990) ("The inclusion of a third-party benefit in a plea bargain is simply one factor for a district court to weigh in making the overall determination whether the plea is voluntarily entered."); *United States v. Wheat*, 813 F.2d 1399 (9th Cir. 1987) ("[I]nstead of declaring [package deal] plea bargains *per se* impermissible, we enforce a trial judge's duty to ensure that such pleas are voluntary, as required by FED. R. CRIM. P. 11(d).").

7.   <u>Where the evidence does not establish all of the elements of a defense, the Court should not submit the defense to the jury.</u>

Ennis claims the Government's informant pursued him "relentlessly, plying him with drinks and using his friendship and sympathy to beguile him into dealing drugs."[18] The evidence, according to Ennis, supports an entrapment defense. Ennis concludes Ramos provided ineffective assistance when he did not request an entrapment jury instruction. The Government counters that before a defendant may present an entrapment defense, the defendant bears the burden of presenting evidence of both "'(1) his lack of predisposition to commit the offense and (2) some governmental involvement and inducement more substantial than simply providing an opportunity or facilities to commit the offense.'"[19] Here, the Government argues, an abundance of admissible evidence established Ennis's willing participation, without any coercion by the confidential source, in the charged conspiracy. The Government claims a trial counsel is required neither to advance every non-frivolous argument nor to investigate every conceivable matter.[20] Likewise, the Sixth Amendment does not require a counsel to perform the impossible or unethical; if there is no *bona fide* defense to the charge, counsel is not required to create one.[21] The Government suggests that Ennis's argument fails because entrapment was not a *bona fide* defense, and urges the Court to reject his claim.

---

[18] Pet'r's Mem. in Supp., Docket No. 282, at 3.

[19] *United States v. Ogle*, 328 F. 3d 182, 185 (5th Cir. 2003) (quoting *Bradfield*, 113 F. 3d at 521).

[20] *See Neal v. Cain*, 141 F. 3d 207, 214-215 (5th Cir. 1998) (holding that petitioner's complaints regarding counsel's failure to raise specific defenses did not satisfy the prejudice prong of *Strickland* where proposed defenses were without merit).

[21] *United States v. Cronic*, 466 U.S. 648, 656 n.19 (1984); *Jones v. Jones*, 163 F.3d 285, 304 (5th Cir. 1998).

8.   Sentencing entrapment occurs when officials engage in outrageous conduct for the purpose of increasing the entrapped defendant's sentence.

Ennis also claims Ramos provided ineffective assistance when he failed to argue entrapment at sentencing.  The Fifth Circuit has not embraced the concept of sentencing entrapment, but has, in dictum, indicated that a petitioner would, in order to receive any sentencing relief, have to "show that the [G]overnment agent persuaded [petitioner] to commit a greater criminal offense than he was predisposed to commit or that the agent's conduct was outrageous, resulting in sentencing factor manipulation."[22]  Here, the Government claims, the evidence supports a conclusion that Ennis readily entered into large cocaine and marijuana transactions when the opportunities were presented, whether or not those opportunities arose from governmental action.  This, according to the Government, defeats any claim that Ennis lacked predisposition to traffic in large quantities of drugs.  Additionally, the evidence does not support a conclusion that the government agent's conduct was outrageous.  Given that Ennis's sentencing entrapment argument lacks merit, the Government asserts that Ramos was not ineffective for failing to raise the defense.

E.   Ennis's Reply

In his reply, Ennis claims that he would have accepted a "reasonable plea offer."[23]  However, Ennis alleges that the prosecutor used "illegal tactics" in an attempt to force him to "relinquish his constitutional rights."[24]  Giving up these rights, according to Ennis, is something

---

[22] United States v. Snow, 309 F. 3d 294, 295 (5th Cir. 2002).

[23] Pet'r's Traverse to Gov't's Response, Docket No. 288, at 3.

[24] Id. at 4.

he could not do.  Ennis then asserts, "[i]t is also clear that had counsel investigated and further

developed this offer[,] he could have produced a sentence of less than fifteen years."[25]  Ennis

suggests that Ramos should have gone all the way to the President to obtain a better plea offer.

Ennis also indicates his unwillingness to accept the Government's assertion that the evidence

would not support an entrapment defense.  He "maintains his argument that there is no evidence

that he was predisposed to deal in any quantities of drugs at all until presented with the unlawful

coercion of [the Government's] agent."[26]  Finally, Ennis claims the prosecutor "has a duty to

represent all Americans, including the defendant."[27]  He explains a "conflict is clear, in that the

prosecution has only represented the government's interest" in this matter.[28]

## II.    LEGAL STANDARD

### A.    28 U.S.C. § 2255

After a defendant has been convicted and exhausted or waived any right to appeal, a court

is "entitled to presume that the defendant stands fairly and finally convicted."[29]  Accordingly,

"'[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a

narrow range of injuries that could not have been raised on direct appeal and would, if condoned,

result in a complete miscarriage of justice.'"[30]  A criminal defendant seeking relief from his

---

[25] *Id.* at 2.

[26] *Id.* at 9.

[27] *Id.* at 4.

[28] *Id.*

[29] *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001).

[30] *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (quoting *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir.1994)).

conviction or sentence in a motion to vacate pursuant to § 2255 must therefore establish one of the following: "(1) his sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack."[31]

Moreover, "[w]hen raising issues of jurisdictional or constitutional magnitude for the first time on collateral review, a defendant ordinarily must show both cause for his procedural default and actual prejudice resulting from the error.  This cause-and-actual-prejudice standard is "significantly more rigorous than even the plain error standard . . . applied on direct appeal."[32] The procedural bar does not apply, however, to claims which could not have been raised on direct appeal, such as those alleging ineffective assistance of counsel.[33]

B.     *Ineffective Assistance of Counsel*

The United States Constitution's Sixth Amendment guarantees an accused the right to the assistance of counsel for his defense in all criminal prosecutions.[34]  Moreover, "the right to counsel is the right to the effective assistance of counsel."[35]  A court may accordingly hear an ineffective assistance of counsel claim in a § 2255 motion.[36]  To merit relief pursuant to § 2255 on an ineffective assistance of counsel claim, however, a petitioner must demonstrate both:  (1)

---

[31] *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995).

[32] *Gaudet,* 81 F.3d at 589.

[33] *See United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992) (stating that the general rule in the Fifth Circuit is that, except in rare instances where the record on direct appeal is adequate to evaluate such a challenge, an ineffective assistance of counsel claim cannot be resolved on direct appeal because no opportunity existed for the parties to develop the record on the merits of the allegations).

[34] U.S. CONST. amend. VI.

[35] *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).

[36] *Gaudet,* 81 F.3d at 589.

his trial counsel's performance fell below an objective standard of reasonableness; and (2) this deficient performance prejudiced his defense.[37]   A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective.[38]

In assessing whether a particular counsel's performance was constitutionally deficient, a court will indulge a strong presumption that counsel's conduct fell within the wide range of reasonable assistance.[39]   Accordingly, the performance inquiry must center on whether counsel's assistance was reasonable considering all the circumstances at the time of counsel's conduct.[40] Mere "error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."[41]   The test's deficient performance prong requires petitioner to establish "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[42]   Additionally, a deficiency in counsel's performance, standing alone, does not equal ineffective assistance of counsel if the petitioner fails to demonstrate actual prejudice.[43]

The test's prejudice prong requires the petitioner to show there is a reasonable probability that, but for counsel's unprofessional errors, the proceeding's result would have been different.[44] A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.[45]

---

[37] *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

[38] *Id.* at 696.

[39] *Id.* at 689.

[40] *Id.* at 688-90.

[41] *Id.* at 687-90.

[42]*Id.* at 687.

[43]*Id.* at 686-87.

[44] *Id.* at 694.

[45] *Id.*

With these principles in mind, the Court turns to the merits of Ennis's claims.

**III.**   **ANALYSIS**

   *A.*   *Ennis's Claims Concerning a Plea Bargain*

Ennis contends that Ramos provided ineffective assistance by failing to adequately investigate the facts regarding a proffered plea agreement, pursue a counteroffer, or negotiate a deal with the prosecutor's superiors.  In sum, Ennis claims that Ramos failed to negotiate a more favorable plea agreement than the one offered by the prosecutor.  Ennis's contentions are without merit.

The *Strickland* test in the context of counsel's pretrial performance applies to the advice given by counsel in guilty-plea discussions.[46]  In the context of such decisions, the deficiency prong focuses on whether the attorney's conduct was within the range of competence demanded of attorneys in criminal cases.[47]  The prejudice prong requires scrutinizing "whether counsel's constitutionally ineffective performance affected the outcome of the plea process."[48]  In order to establish prejudice where a defendant has gone to trial rather than enter a plea, the defendant must show:  (1) he would have accepted a plea but for counsel's advice;[49] and (2) had he done so, he would have received a lesser sentence.[50]

---

[46] *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004); *United States v. Ridgeway*, 321 F.3d 512, 514 (5th Cir. 2003).

[47] *See Hill*, 474 U.S. at 58-59 ("Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another."); *see Grammas*, 376 F.3d at 436 (explaining a § 2255 movant must show that counsel's performance fell below an objective standard of reasonableness); *see also James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995) (noting that to satisfy the deficiency prong in the plea-bargaining arena, a petitioner must establish that his trial counsel's performance fell below an objective standard of reasonable competence).

[48] *Hill*, 474 U.S. at 59.

[49] *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994).

[50] *Grammas*, 376 F.3d at 438; *see United States v. Booth*, 432 F.3d 542, 546 (3rd Cir. 2005) (explaining a defendant must show that, but for counsel's ineffectiveness, he would have received a lower sentence).

As the Government correctly points out in its Response, a defendant does not have a constitutional right to a plea bargain; rather, the prosecutor has the discretion to either bargain or go to trial.[51] Accordingly, failing to obtain a plea agreement does not establish deficient attorney conduct, and therefore does not provide grounds for an ineffective assistance claim.

Moreover, Ennis has not suggested that Ramos told him to reject the Government's plea offer. Further, Ennis has not shown or even alleged that the Government was interested in entering into further plea negotiations. Ennis offers nothing more than his bare assertion that he would have pleaded guilty had the Government offered a more favorable deal. There is simply no evidence in the record to support Ennis's belated claim that he would have agreed to a more favorable plea offer. To the contrary, the facts show Ennis rejected a proffered plea agreement and voluntarily pleaded not guilty in open court at his arraignment. Consequently, Ennis has not established that he has suffered prejudice as a result of Ramos's alleged ineffective assistance.

The Court accordingly finds that Ramos did not provide ineffective assistance when he purportedly failed to negotiate a more favorable plea agreement. To the contrary, the Court finds that Ramos competently represented Ennis in accordance with the Sixth Amendment. Thus, Claims One, Four, and Five are without merit.

Ennis also claims that the prosecutor acted in bad faith and used illegal tactics when he made the proffered plea agreement contingent on guilty pleas by all defendants. "There is no doubt that the breadth of discretion that our country's legal system vests in prosecuting attorneys carries with it the potential for both individual and institutional abuse."[52]

> '[G]uilty pleas made in consideration of lenient treatment as against third parties pose a greater danger of coercion than purely bilateral plea bargaining.' Even so, there is no 'intrinsic constitutional infirmity' in promising leniency to a third party in exchange for a guilty plea. A prosecutor has discretion to 'inform an accused that an implicated third person will be brought to book if he does not plead guilty.' The prosecutor

---

[51] *Lopez*, 979 F.2d at 1036.

[52] *Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978).

has a duty of good faith in making such a representation, which duty is satisfied where he has probable cause to believe the third person has committed a crime.[53]

In the instant case, Ennis provides no evidence to support his contention that the prosecutor acted in bad faith. Although the proffered plea agreement may have pitted Ennis against his son, the record contains substantial evidence that Ennis's son and other co-defendants were actively involved in the drug trafficking conspiracy. Accordingly, the Court finds the prosecutor had probable cause to believe the co-defendants committed crimes and the prosecutor acted in good faith. Therefore, the Court concludes Claim Six is without merit.

B.    *Ennis's Claims Concerning Entrapment*

Ennis's entrapment claims are likewise infirm. "[T]he Government may use undercover agents to enforce the law," and employ "artifice and stratagem . . . to catch those engaged in criminal enterprises."[54] Entrapment occurs "when the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute."[55] Entrapment is an affirmative defense with two related elements: (1) government inducement of the crime; and (2) a lack of predisposition on the part of the defendant to engage in the criminal conduct.[56] "Predisposition, 'the principal element in the defense of entrapment,' focuses upon whether the defendant was an 'unwary innocent' or, instead, an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime."[57] "The active, enthusiastic

---

[53] *United States v. McElhaney*, 469 F.3d 382, 385 (5th Cir. 2006) (quoting *United States v. Nuckols*, 606 F.2d 566, 569 (5th Cir. 1979)).

[54] *Ogle*, 328 F.3d at 185 (quoting *Jacobson v. United States*, 503 U.S. 540, 548 (1992).

[55] *Sorrells v. United States*, 287 U.S. 435, 442 (1932).

[56] *Mathews v. United States*, 485 U.S. 58, 63 (1988).

[57] *Id.* (quoting *United States v. Russell*, 411 U.S. 423, 433, 436 (1973)).

-17-

participation on the part of the defendant is enough to allow the jury to find predisposition."[58]

> Because entrapment involves the basic determination of guilt or innocence, it is a jury issue, and the defendant's predisposition to commit an unlawful act seldom will be 'capable of determination without the trial of the general issue.'  A guilty plea consequently waives the right to assert the defense.[59]

Since a guilty plea waives an entrapment defense,[60] Ramos properly informed Ennis that he could only assert the defense at trial.  Ramos's accurate advice cannot support an ineffective assistance of counsel claim.[61]  Therefore, the Court concludes it should reject Claim Two.

Additionally, evidence in the record supports a finding that Ennis was predisposed to commit the crimes.  DEA agents recorded Ennis apparently arranging a 700 pound marijuana shipment to Minnesota or Ohio.  The following day, agents observed an Oldsmobile Cutlass enter Ennis's property.  El Paso County Sheriff's Deputies later stopped the Cutlass and discovered a small quantity of marijuana stems and seeds under the back seat.  Deputies also observed loose door panels inside the car, a characteristic consistent with drug smuggling.[62]  Deputies then stopped Ennis's truck and arrested him.  A narcotic detection dog alerted to six boxes in the truck's bed containing cocaine and marijuana residue.  Upon his release from jail, Ennis called his wife and instructed her to put all incriminating evidence into an envelope, address it to their home, and place it in a mailbox.  A later examination of the envelopes revealed

---

[58] *United States v. Rodriguez*, 43 F.3d 117, 126-27 (5th Cir. 1995).

[59] *United States v. Yater*, 756 F.2d 1058, 1062-63 (5th Cir. 1985) (quoting *United States v. Graves*, 556 F.2d 1319, 1321 (5th Cir. 1977).

[60] *Id.*; *see also United States v. Sarmiento*, 786 F.2d 665, 668 (5th Cir. 1986) ("Entrapment, a defense on the merits, was waived by the guilty plea.").

[61] *Puckett*, 907 F.2d at 585 n.6 ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim.").

[62] *Ornelas v. United States*, 517 U.S. 690, 700 (1996) ("To a layman the . . . loose panel . . . in the automobile . . . may suggest only wear and tear, but to Officer Luedke, who had searched roughly 2,000 cars for narcotics, it suggested that drugs may be secreted inside the panel.").

14.5 grams of cocaine and drug paraphernalia.  The following week, Ennis asked Portillo to transport cocaine to New York City.  When Portillo arrived at Ennis's residence, Ennis gave Portillo a box containing 30 kilograms of cocaine.  Ennis also gave Portillo contact information for a New York buyer.  When federal authorities arrested Ennis, Ennis told them he had hidden 500 pounds of marijuana in his house.  The agents obtained a search warrant and discovered approximately 700 pounds of marijuana inside a closet.

Upon reviewing the evidence, the Court finds that Ennis was hardly an unwary innocent; he was an active and enthusiastic participant in this criminal enterprise.  Ennis could not "make an initial showing that he lacked the predisposition to commit the crime . . . before first being approached by government agents."[63]  The Sixth Amendment does not require counsel to perform the impossible or unethical; if there is no *bona fide* defense to the charge, counsel is not required to create one.[64]  The Court therefore concludes Claim Seven is without merit.

Ennis also argues that he was denied the right to effective assistance of counsel because Ramos failed to advance the theory of "sentencing entrapment" in order to secure him a lower term of imprisonment.  "This 'trendy' argument appears to be in vogue currently; it has recently been proffered by numerous defendants around the country, being referred to variously by the courts as 'sentencing entrapment' or 'sentencing factor manipulation.'"[65]  The Fifth Circuit has not embraced this concept, but has indicated that a petitioner would, in order to receive any sentencing relief, have to "show that the [G]overnment agent persuaded [petitioner] to commit a greater criminal offense than he was predisposed to commit or that the agent's conduct was outrageous, resulting in sentencing factor manipulation."[66]  On the other hand, law enforcement

---

[63] *Smith*, 481 F.3d at 262-63.

[64] *Cronic*, 466 U.S. at 656 n.19; *Jones*, 163 F.3d at 304.

[65] *United States v. Washington*, 44 F.3d 1271, 1279-1280 (5th Cir. 1995).

[66] *Snow*, 309 F. 3d at 295.

"'must be given leeway to probe the depth and extent of a criminal enterprise, to determine whether coconspirators exist, and to trace the drug deeper into the distribution hierarchy.'"[67]

Here, the record is bereft of any evidence supporting an entrapment theory. Ennis has not alleged any overbearing and outrageous conduct by the Government to induce his participation in the distribution of marijuana in the Midwest or cocaine in Manhattan. An attorney's performance cannot be deemed deficient if he fails to lodge futile objections. Therefore, Ennis is not entitled to habeas relief based on Claim Eight.

### C. Ennis's Claim Concerning a Conflict of Interest

Ennis claims Ramos should have argued the existence of a conflict of interest. In his Reply, Ennis asserts that the prosecutor "has a duty to represent all Americans, including the defendant."[68] He explains a "conflict is clear, in that the prosecution has only represented the government's interest."[69]

Contrary to Ennis's assertion, prosecutors do not represent individual parties; they represent the sovereign. In an often quoted passage, the Supreme Court explains the nature of the United States Attorney's duty and the values the duty is designed to effect:

> The United States Attorney is a representative not of an ordinary party to the controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor – indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from

---

[67] *United States v. Baber*, 161 F.3d 531, 532 (8th Cir. 1998) (quoting *United States v. Calva*, 979 F.2d 119, 123 (8th Cir.1992)). *See also United States v. Scull*, 321 F.3d 1270, 1277 (10th Cir. 2003) (explaining police must be given leeway to determine whether a criminal enterprise exists); *United States v. Baker*, 63 F.3d 1478, 1500 (9th Cir. 1995) ("[S]ince the government bears the burden of proving its case beyond a reasonable doubt, it must be permitted to exercise its own judgment in determining at what point in an investigation enough evidence has been obtained.").

[68] Pet'r's Traverse to Gov't's Response, Docket No. 288, at 4.

[69] *Id.*

improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.[70]

Thus, the title "United States Attorney" does not exempt its holder from the ethical constraints of advocacy.[71] "Prosecutors accordingly have an obligation 'to refrain from improper methods calculated to produce a wrongful conviction ....'"[72] "A breach of that obligation constitutes serious prosecutorial misconduct."[73]

In the instant case, there is no evidence of a conflict of interest. Further, there is no indication that the prosecutor used improper methods to obtain a conviction or that Ennis was wrongfully convicted. Ennis is therefore not entitled to habeas relief based on Claim Three.

## IV.   CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."[74] Further, appellate review of a habeas petition is limited to the issues on which a certificate of appealability is granted.[75] In other words, a certificate of appealability is granted or denied on an issue-by-issue basis, thereby limiting appellate review solely to those issues on which certificate

---

[70] *Berger v. United States*, 295 U.S. 78, 88 (1935).

[71] *See United States v. Beckett*, 706 F.2d 519, 521 n.5 (5th Cir. 1983) ("[T]he prosecutor does not have a 'hunting license exempt from ethical constraints of advocacy.'") (quoting *United States v. Bursten*, 453 F.2d 605, 610-11 (5th Cir. 1971)).

[72] *United States v. Johnston*, 127 F.3d 380, 395-96 (5th Cir. 1997) (quoting *United States v. Murrah*, 888 F.2d 24, 28 (5th Cir. 1989)).

[73] *Id.* at 396.

[74] 28 U.S.C.A. § 2253(c)(1)(A) (West 2007).

[75] *See Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997) (holding that, in regard to the denial of relief in habeas corpus actions, the scope of appellate review is limited to the issues on which a certificate of appealability is granted).

of appealability is granted.[76]  Although Ennis has not yet filed a notice of appeal, this Court

nonetheless may address whether he is entitled to a certificate of appealability.[77]

A certificate of appealability "may issue ... only if the applicant has made a substantial

showing of the denial of a constitutional right."[78]  To warrant a grant of the certificate as to

claims that the district court rejects solely on procedural grounds, the petitioner must show both

that "jurists of reason would find it debatable whether the petition states a valid claim of the

denial of a constitutional right and that jurists of reason would find it debatable whether the

district court was correct in its procedural ruling."[79]  Here, Ennis's Motion fails because he

cannot make a substantial showing of the denial of a constitutional right.  Accordingly, Ennis is

not entitled to a certificate of appealability .

## V.    CONCLUSION AND ORDERS

The Court concludes that Petitioner Chester Ennis has not raised any constitutional or

jurisdictional errors entitling him to habeas relief.  The Court will therefore deny his Motion to

Vacate and dismiss this cause with prejudice.  The Court further concludes that Ennis is not

entitled to a certificate of appealability.  The Court accordingly enters the following orders:

    1.     Petitioner Chester Ennis's *pro se* "Motion Under 28 U.S.C. § 2255 to Vacate, Set

Aside, or Correct Sentence by a Person in Federal Custody" [Docket No. 278] is

**DENIED** and his civil cause is **DISMISSED WITH PREJUDICE.**

---

[76] *See* 28 U.S.C.A. §2253(c)(3) (setting forth the narrow scope of appellate review in habeas corpus matters); *Crutcher v. Cockrell*, 301 F.3d 656, 658 n.10 (5th Cir. 2002) (holding that a certificate of appealability is granted on an issue-by-issue basis, thereby limiting appellate review to those issues).

[77] *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (explaining it is appropriate for district court to address *sua sponte* issue of whether a certificate of appealability should be granted or denied, even before one is requested).

[78] 28 U.S.C.A. § 2253(c)(2).

[79] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* to certificate of appealability determination in context of § 2255 proceedings).

2.      Petitioner Chester Ennis is **DENIED** a **CERTIFICATE OF APPEALABILITY**.

3.      All pending motions in this cause, if any, are **DENIED AS MOOT**.

**SIGNED** this _20th_ day of December 2007.

PHILIP R. MARTINEZ
UNITED STATES DISTRICT JUDGE