IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| v. | § | EP-02-CR-1430-PRM-1 |
| | § | |
| CHESTER ENNIS, | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR REDUCTION IN SENTENCE

On this day, the Court considered:

- Defendant Chester Ennis's [hereinafter "Defendant"] "Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)" (ECF No. 464) [hereinafter "Motion"], filed on July 12, 2019,

- Defendant's "Supplemental Record in Support of Motion for Reduction in Sentence" (ECF No. 482) [hereinafter "Supplemental Record"], filed on October 4, 2019,

- the Government's "Response to Defendant's Motion for Reduction in Sentence" (ECF No. 484) [hereinafter "Response"], filed on October 10, 2019,

- Defendant's "Reply in Support of Its Motion for Reduction in Sentence" (ECF No. 485) [hereinafter "Reply"], filed on October 23, 2019,

- Defendant's "Supplement to Motion for Reduction in Sentence Based on COVID-19 Pandemic" (ECF No. 486) [hereinafter "Supplement"], filed on March 27, 2020,

- the Government's "Response to Defendant's Supplemental Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)" (ECF

No. 491) [hereinafter "Supplemental Response"], filed on May 1, 2020, and

- Defendant's "Reply to Government Response to 'Supplemental Motion'" (ECF No. 491), filed on May 13, 2020, in the above-captioned cause.

Defendant seeks a reduction of his life sentence to time served for "extraordinary and compelling reasons" pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act.  Mot. 1; First Step Act of 2018, Pub. L. No. 115-391, § 603, 132 Stat. 5194.  After due consideration, the Court is of the opinion that Defendant's Motion should be granted for the reasons that follow.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Defendant has a lengthy criminal history of non-violent drug offenses.  On January 15, 1979, Defendant was convicted of marijuana possession and sentenced to ten years' probation.  Resp. 8.  On September 6, 1986, Defendant was convicted for conspiracy, racketeering and possession with intent to distribute marijuana, and sentenced to fifteen years' custody.  Presentence Investigation Report [hereinafter "PSR"] ¶ 63, July 12, 2019, ECF No. 466.  Defendant was paroled for this conviction on September 12, 1988.  *Id*.  On April 13, 1992, Defendant pled guilty to conspiracy to possess with intent to distribute marijuana.

Resp. 8.  He was sentenced to and served forty months' custody followed by a three-year term of supervised release.  *Id*.  On September 26, 2000, Defendant's parole from his September 6, 1986, conviction was revoked and he was sentenced to six months' custody.  PSR ¶ 63.  Defendant was again paroled for his September 6, 1986, conviction on December 1, 2000. *Id*.

On August 29, 2002, at the age of  fifty-five, Defendant was arrested and subsequently convicted for six felonies related to a large-scale drug trafficking operation.  Mot. 4, Resp. 8–9.  Defendant was found accountable for "trafficking 633.22 kilograms of marijuana and 35.30 kilograms of cocaine."  Resp. 9.  He committed these offenses in violation of the terms of parole from his September 6, 1986, conviction, and less than two years following his release from custody on December 1, 2000. PSR ¶ 63–64.  These convictions did not involve violence or a weapon, and had no identifiable victims.  PSR ¶ 48.  Defendant's guideline sentencing range was 360 months to life, due to Defendant's status as a career offender and his role as a leader of a drug trafficking organization.  PSR ¶¶ 55, 58, 101.  However, pursuant to 21 U.S.C. § 841(b)(1)(A), which

required a mandatory life sentence in Defendant's case, on August 31, 2003, the Court sentenced Defendant to life imprisonment.[1]

As of filing his Motion, Defendant had served nearly seventeen years of his sentence and was seventy-one years of age.  Mot. 1, 4.  While incarcerated, he has had no infractions or disciplinary actions, has learned new skills such as leatherworking and computer operation, and has worked as a leatherworking instructor for other inmates.  Mot. 5. Defendant has satisfied all fines and assessments imposed against him through his employment with UNICOR, where he has received outstanding performance ratings.  *Id*.  Defendant also communicates with his family through letter, telephone, and in-person visits, and maintains a "good rapport" with prison staff and other inmates.  Mot. 5.  In the event of Defendant's release he would live with his son, William Ennis,[2] in El Paso, Texas.  Mot. Ex. 7, at 6.

---

[1] Mot. 4.  The First Step Act of 2018 amended 21 U.S.C. § 841(b)(1)(A) to require a mandatory minimum of 25 years, rather than life imprisonment, for offenders who had two or more prior convictions for a serious drug felony.  First Step Act of 2018, § 401.

[2] William "Billy" Ennis was a codefendant in the above-captioned cause. PSR 4.  On May 7, 2003, he was found guilty by jury trial on three counts related to drug trafficking.  *Id*.  Thereafter, he was sentenced to a term of life imprisonment.  J. Criminal Case 2, *United States v. William Ennis*, No. EP-02-CR-1430-PRM-3, Sept. 10, 2003, ECF No. 247.  On August 5,

Defendant has a variety of illnesses and health issues.  The Federal Bureau of Prisons [hereinafter "BOP"] has issued medications to Defendant to treat diabetes, mellitus, hypertension, arthritis, asthma, hypothyroidism and hyperlipidemia.  Mot. Ex. 21, at 1.  As Defendant has aged, doctors have increased Defendant's dosage of medication to manage his health conditions.  *Id.*  For example, whereas Defendant received 1,000 milligrams per day of the drug Metformin for diabetes in 2003, he now receives 2,500 milligrams per day.  Mot. 5.  Doctor Rez Farid, an associate professor of physical medicine and rehabilitation at the University of Missouri, indicated in a July 9, 2019, letter that Defendant's medical records "sugges[t] a deterioration in [Defendant's] physical health which may be characterized as serious," and he expects Defendant's conditions "to be lifelong and progressively debilitating."  Mot. Ex. 21, at 1–2.

BOP records indicate that as of August 3, 2015, Defendant had no medical restrictions on his work assignments and had been cleared to work in food service.  Resp. 12; Mot. Ex. 6 at 6.  Defendant has also been

_____

2016, Defendant William Ennis received an executive grant of clemency, allowing for his release on December 1, 2016.  Executive Grant of Clemency, *United States v. William Ennis*, No. EP-02-CR-1430-DB-3, Aug. 5, 2003, ECF No. 446.

classified as a "Level 2" care category inmate, indicating he has medical conditions which "can generally be managed with clinical interventions." Resp. 10–11; Suppl. Ex. 3, at 1.

However, Defendant maintains he has "[d]ifficulty standing and walking," and "can no longer stand for longer than five minutes at a time." Mot. 5; Resp. 11.  At various times, Defendant's pain and mobility issues have been attributed to degenerative conditions in the hips and knees, and bone spurs in his feet.  Mot. 5.  BOP initially assigned Defendant a lower bunk bed and provided him with orthopedic shoes to mitigate these symptoms.  Resp. 11.  Dr. Farid indicated in his July 9, 2019, letter that the use of orthopedic shoes "raises concern for a higher protective level for the prevention of diabetic neuropathy foot complications that can lead to amputation and chronic wounds."  Mot. Ex. 21, at 2.

On September 20, 2019, BOP conducted a medical appointment addressing Defendant's chronic lower back pain, which included X-rays and a radiology report.  Resp. Ex. 7, at 1.  At a subsequent medical appointment on September 24, 2019, Defendant stated that he could not walk without a cane.  Resp. Ex. 5, at 1.  Rather than providing Defendant with a requested walker with a seat, BOP provided him with a wheelchair.  *Id.*

6

Dr. Farid examined the medical records from these appointments, including the radiology report.  Suppl. Record Ex. 1.  He determined in an October 3, 2019, letter that Mr. Ennis' condition should be attributed to "degenerative spine disease," specifically "spinal stenosis," rather than arthritic hips and knees.  *Id.*  He also noted that individuals like Defendant who have diabetes "have more difficulty managing this condition."  *Id.*  Lastly, he concluded that "Mr. Ennis is experiencing a serious deterioration in physical health because of the aging process, and . . . he is unlikely to recover substantially from this condition and will instead continue to functionally decline as he gets older."  *Id.*

Defendant made his first "Request for Compassionate Release" on August 29, 2017, to the Warden at FCI Florence.  Mot. 6–7.  The Warden denied the request, writing that "although you have several chronic medical conditions, you are able to independently attend to your activities of daily living, and you are not experiencing deteriorating mental or physical health that substantially diminishes your ability to function in a correctional facility."  Mot. 7.

On May 10, 2018, Defendant appealed the denial of his "Request for Compassionate Release" to the Regional Office of BOP.  Mot 7.  The Regional Director denied the appeal, writing that Defendant's

"circumstances did not meet the policy requirements as outlined in

Program Statement 5050.49 . . . Compassionate Release/Reduction in

Sentence:  Procedures for Implementation of 18 U.S.C. § 3582(c)(1)(A)."

Mot. 8.

Defendant further appealed BOP's decision on June 15, 2018, to

BOP's Office of General Counsel.  Mot. 8.  BOP's Administrator for

National Inmate Appeals informed Defendant that he did not meet the

criteria for a "Reduction in Sentence" because, "your medical conditions

are under control and do not substantially diminish your ability to

function in a correctional facility," and Defendant had not served at least

half of his sentence.  Mot. 8.  After pursuing these administrative

remedies, Defendant moved for compassionate release in the above-

captioned cause on July 12, 2019.  Mot. 1.

Beginning on March 12, 2020, the Western District of Texas issued a

series of standing orders regarding the COVID-19 Pandemic.[3]  The

District's initial substantive order provides that "COVID-19 qualifies as a

global pandemic" and "there have been several confirmed cases of

---

[3] *See Coronavirus (COVID-19) Guidance*, Western District of Texas,
https://www.txwd.uscourts.gov/coronavirus-covid-19-guidance/ (last
visited May 12, 2020).

coronavirus within the Western District of Texas."[4]  According to the

Centers for Disease Control and Prevention [hereinafter "CDC"], adults

sixty-five years and older who have serious underlying health conditions

such as lung disease, asthma, heart conditions, or diabetes are at a higher

risk for severe illness from COVID-19.  Suppl. Ex. 25.

BOP concedes that "the population density of prisons creates a risk

of infection and transmission for inmates and staff."  *Id*. at Ex. 26.

Defendant is currently incarcerated at FCI Big Spring in Big Spring,

Texas, where there are no reported COVID-19 cases amongst inmates or

staff.[5]  However, as of May 12, 2020, 658 federal inmates in the state of

Texas have tested positive for COVID-19, seven inmates have died of the

same, and the Court observes that these figures are increasing quickly.[6]

In his Supplement, Defendant requests that the Court consider this

information related to COVID-19 in connection with his Motion.  Suppl. 1.

---

[4] Supplemental Order Regarding Court Operations Under the Exigent
Circumstances Created by the COVID-19 Pandemic (Mar. 13, 2020,
(signed by Chief United States District Judge Orlando L. Garcia)).

[5] *Find an Inmate*, BOP, https://www.bop.gov/inmateloc/ (last visited May
12, 2020); *Coronavirus*, BOP, https://www.bop.gov/coronavirus/ (last
visited May 13, 2020).

[6] *Id*.

## II.   LEGAL STANDARD

A district court generally may not modify or reduce a sentence because "[a] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)).  However, "[a] court, on a motion by the BOP or by the defendant after exhausting all BOP remedies, may reduce or modify a term of imprisonment, probation, or supervised release after considering the factors of 18 U.S.C. § 3553(a), if 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Chambliss*, 948 F.3d 691, 692 (5th Cir. 2020) (quoting § 3582(c)(1)(A)(i)).  Such a reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *1 (S.D. Tex. June 17, 2019) (quoting § 3582(c)(1)(A)(i)).  Furthermore, "the defendant has the burden to show circumstances meeting the test for compassionate release." *United States v. Stowe*, No. CR H-11-803 (1), 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019) (quoting *United States v. Heromin*, No. 8:11-CR-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019)).

## III.  ANALYSIS

Pursuant to 18 U.S.C. § 3582(c)(1)(A) and the United States Sentencing Commission's [hereinafter "USSC"] applicable policy statements, in order to obtain compassionate release a defendant must demonstrate that (1) they have exhausted administrative remedies, (2) their circumstances are extraordinary and compelling, (3) their release would pose no danger to any other person or to the community, and (4) relief is warranted in light of applicable sentencing factors.  Here, the Court is of the opinion that Defendant has met his burden to show each of these requirements.  Accordingly, the Court is of the opinion that Defendant's Motion should be granted.

### A.    Compassionate Release and the First Step Act

The Sentencing Reform Act of 1984 modified existing sentencing standards to allow federal courts to reduce defendants' sentences for "extraordinary and compelling reasons," a process often referred to as "compassionate release."[7]  Sentencing Reform Act of 1984, Pub. L. No. 98–473, 98 Stat 1837.  The Act set out a structure where only BOP could bring motions for compassionate release on behalf of defendants.  *Id*.

---

[7] *See* Federal Postconviction Remedies & Relief Handbook with Forms § 2:4.20 (referring to § 3582 remedy as "compassionate release").

The First Step Act, which became effective on December 21, 2018, modified the Sentencing Reform Act's structure for compassionate release. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  Section 603(b) of the First Step Act allows a defendant to bring a motion for modification of a sentence for "extraordinary and compelling reasons" pursuant to 18 U.S.C. § 3582(c), rather than requiring BOP to bring such a motion.  *Id.* at § 603(b).

The First Step Act's title, "Increasing the Use and Transparency of Compassionate Release," indicates Congress' intent to broaden the use of compassionate release by allowing defendants to bring their own compassionate release motions.  *Id.*; see *United States v. Johns*, No. CR 91-392-TUC-CKJ, 2019 WL 2646663, at *1 (D. Ariz. June 27, 2019) (describing intent of the First Step Act).  Some courts have also noted that prior to the First Step Act, BOP had been criticized for failing to bring compassionate release motions on behalf of eligible defendants.  *See United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (noting that BOP "rarely" brought compassionate release motions).

### B.    Exhaustion of Administrative Remedies

Pursuant to 18 U.S.C. § 3582(c)(1)(A), a defendant may bring a motion for compassionate release "after the defendant has fully exhausted

all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the Defendant's behalf."  18 U.S.C. § 3582(c)(1)(A). Here, the Court concludes that Defendant's Motion demonstrates that he has exhausted his administrative rights to appeal BOP's decision not to bring a motion on his behalf.

On August 29, 2017,  Defendant made a written "Request for Compassionate Release" to the Warden at FCI Florence, which the Warden denied.  Mot. 7; Mot. Ex. 7, at 1.  On May 10, 2018, Defendant appealed the denial of his request to BOP's Regional Office, and BOP denied the appeal.  Mot. 7–8.  Defendant further appealed the decision to BOP's Office of General Counsel, which again denied the appeal.  Mot. 8. A denial from BOP's Office of General Counsel "constitutes a final administrative decision."  28 C.F.R. § 571.63(b).  Accordingly, the Court is of the opinion that Defendant has fully exhausted his administrative rights to appeal a failure of BOP to bring a motion pursuant to 18 U.S.C. § 3582(c)(1)(A) on Defendant's behalf.

The Government construes Defendant's Supplement as an independent motion for a reduction of sentence pursuant to § 3582(c), and argues that the Court should deny the Supplement "without prejudice for Defendant's failure to exhaust administrative remedies."  Suppl. Resp. 1.

However, the Court is of the opinion that the Government has misconstrued Defendant's Supplement.  The Supplement is titled "Supplement to Motion," and refers to Defendant's original Motion rather than making a prima facie case for a sentencing reduction.  Suppl. 1. Accordingly, the Court is of the opinion that the Supplement is not an independent motion which requires Defendant to exhaust administrative remedies.  Rather, the Court will consider the Supplement alongside Defendant's well-pled Motion which properly exhausts administrative remedies.

## C.    Extraordinary and Compelling Reasons

The Court "[m]ay reduce [a defendant's] term of imprisonment . . . if it finds that extraordinary and compelling reasons warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A).  The Court concludes that extraordinary and compelling reasons related to the Defendant's age warrant a reduction in the Defendant's sentence here.

Congress provided that the USSC "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."  28 U.S.C. § 994(t).  The USSC last issued a policy statement, U.S.S.G. § 1B1.13, on November 1, 2018, to define these extraordinary and

14

compelling reasons.  Although the USSC has not updated U.S.S.G.
§ 1B1.13 since the passage of the First Step Act, "courts have universally
turned to U.S.S.G. § 1B1.13 to provide guidance on the 'extraordinary and
compelling reasons' that may warrant a sentence reduction." *United
States v. McGraw*, 2019 WL 2059488, at *2 (S.D. Ind. May 9, 2019);  *see
United States v. Ebbers*, No. S402CR11443VEC, 2020 WL 91399, at *4
(S.D.N.Y. Jan. 8, 2020) ("U.S.S.G. § 1B1.13's descriptions of 'extraordinary
and compelling reasons' remain current, even if references to the identity
of the moving party are not.").

Here, Defendant moves for relief pursuant to U.S.S.G. § 1B1.13,
Application Note 1(B), Age of the Defendant.  Application Note 1(B)
provides that a defendant's age qualifies as an extraordinary and
compelling circumstance when "the defendant (i) is at least 65 years old;
(ii) is experiencing a serious deterioration in physical or mental health
because of the aging process; and (iii) has served at least 10 years or 75
percent of his or her term of imprisonment, whichever is less."  § 1B1.13,
Application Note 1(B).  The Court assesses each of these criteria in turn.

First, the Court is of the opinion that Defendant meets criteria
(i) and (iii) for extraordinary and compelling reasons pursuant to
§ 1B1.13, Application Note 1(B), Age of the Defendant.  At the time of

filing his Motion, Defendant was seventy-one years old, exceeding the threshold age of sixty-five.  In addition, Defendant has served approximately seventeen years of his sentence, which exceeds the Sentencing Commission's requirement of ten years.

Second, the Court is of the opinion that Defendant meets criterion (ii) because his degenerative spine disease and other medical conditions, in totality, qualify as a "serious deterioration in physical or mental health because of the aging process."  *Id.*  In reaching this conclusion, the Court places particular emphasis on the opinions of Dr. Farid.  In his October 3, 2019 letter, Dr. Farid concludes that Defendant's mobility issues should be attributed to "degenerative spine disease," and makes an unambiguous finding that Defendant's disease was a result of the aging process.  Suppl. Record Ex. 1.  He also makes a finding in his July 9, 2019, letter that Defendant's other health conditions such as diabetes, mellitus, hypertension, arthritis, asthma, hypothyroidism and hyperlipidemia "suggest a deterioration in [Defendant's] physical health."  Mot. Ex. 21.  In the absence of a competing medical opinion from the Government, the Court does not question Dr. Farid's conclusions.[8]

---

[8] The Court places little evidentiary value on Government quoting Defendant's radiology report and physical exam records without an

Furthermore, the Court is of the opinion that Defendant's physical deterioration is particularly severe due to the risk posed by the COVID-19 pandemic.  Defendant has asthma, as well as a case of diabetes which has become progressively more difficult to control with his age.  According to the CDC, these conditions increase Defendant's risk of becoming seriously ill from COVID-19.  The Court is also mindful that based on recent BOP reports, there is a high risk that Defendant will be exposed to COVID-19 while in the prison environment.  Thus, the risk posed by COVID-19 in connection with Defendant's health conditions lead the Court to conclude that Defendant's deterioration of physical health due to the aging process is particularly severe, and warrants relief.

While few courts have yet to grant relief pursuant to U.S.S.G. § 1B1.13, Application Note 1(B), Age of the Defendant, the Court's conclusions here are consistent with another court within the Circuit.  In *United States v. Cantu-Rivera*, the district court reduced a defendant's sentence pursuant to Application Note 1(B), Age of the Defendant, based

---

opinion or analysis from a physician to contextualize medical terms and practices.  *See* Resp. 12  ("An x-ray taken the next day, however, showed no soft tissue abnormality; minimal osteoarthritis in the sacroiliac joints . . .") (quoting portions of a radiology report); *id*. ("That exam found no spinal deformity, full range of motion and no tenderness") (quoting a medical exam report).

on age-related conditions like arthritis, cataracts, diabetes, and a prostate condition, as well as the defendant's age and time served.  *See United States v. Cantu-Rivera*, 2019 WL 2578272, at *1 (S.D. Texas, June 24, 2019).  Based on the reports of Dr. Farid, the Court concludes that here too Defendant's degenerative spine disease and other conditions indicate a serious deterioration in physical health due to the aging process, which in conjunction with Defendant's age and time served warrants relief.

The Court's determination here is separate and apart from scenarios in which compassionate release is based solely on a "Medical Condition of the Defendant" pursuant to U.S.S.G. § 1B1.13, Application Note 1(A). Compassionate release based solely on a medical condition "is an extraordinary and rare event."  *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).  It often requires a defendant to be "suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)" such as solid-tumor cancer, ALS, or end-stage organ disease.  U.S.S.G. § 1B1.13, Application Note 1(A)(i).  Application Note 1(B), Age of the Defendant, requires only a "serious deterioration in physical or mental health."  The Court is of the opinion that Defendant's health conditions here are sufficient for relief pursuant to Application Note 1(B), Age of the Defendant, and that it need not determine whether

Defendant's health conditions reach the higher standard required for

Application Note 1(A), Medical Condition of the Defendant.[9]  *See United*

*States v. Wong Chi Fai*, No. 93-CR-1340 (RJD), 2019 WL 3428504

(E.D.N.Y. July 30, 2019) (granting compassionate release pursuant to

Application Note 1(A), Medical Condition of the Defendant, where

terminal cancer left Defendant unable to eat).

Relief pursuant to Application Note 1(A), Medical Condition of the

Defendant, may also require that a medical condition "substantially

diminishes the ability of the defendant to provide self-care within the

environment of a correctional facility." § 1B1.13, Application Note 1(A)(ii).

However, Defendant makes his claim for compassionate release pursuant

to Application Note 1(B), Age of the Defendant, which does not include

similar language.  Although some courts have considered the ability to

function in a correctional facility as a relevant factor in an analysis

pursuant to Application Note 1(B), Age of the Defendant, the Court here

---

[9] The Court notes that the Government construes Defendant's Motion as pled pursuant to Application Note 1(A), Medical Condition of the Defendant, and concedes that Defendant's diabetes, in conjunction with the risk of COVID-19, may satisfy Application Note 1(A)'s standard for "extraordinary and compelling reasons" warranting relief.  Suppl. Resp. 19.  However, the Court does not reach this issue because it grants relief pursuant to Application Note 1(B), Age of the Defendant.

agrees with other district courts that this is "not a required factor." *Ebbers*, 2020 WL 91399, at *5. Thus, the Court does not assess here whether Defendant can provide self-care within a correctional facility.

### D.   Danger to the Community

In order to reduce a term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A), U.S.S.G. § 1B1.13 also requires that the Court determine Defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." § 1B1.13(2). The Court is of the opinion that Defendant is not dangerous due to the nonviolent nature of his crimes as well as his character and background.

In determining whether a defendant is dangerous to the safety of others or the community, 18 U.S.C. § 3142(g) assesses: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

In 2003, Defendant received a mandatory life sentence based on drug trafficking offenses involving marijuana and cocaine. The weight of evidence against Defendant was substantial, as Defendant was convicted

20

on six separate counts. An offense with a substantial weight of evidence involving controlled substances weighs against relief. However, Defendant's offenses were also nonviolent, which weighs in favor of relief.

Defendant's history and characteristics weigh both for and against relief. Prior to his most recent conviction, Defendant had a significant criminal history involving nonviolent drug possession and drug trafficking offenses. He also committed the instant offenses less than two years after finishing a six-month prison sentence, and in violation of the terms of parole. These facts weigh against relief.

However, Defendant has exhibited outstanding behavior while incarcerated. He has paid all fines associated with his conviction through employment at UNICOR, where he has received outstanding reviews, has learned new skills in leatherworking which he teaches to other inmates, and has no record of infractions. In the event of his release, he would live with his son. The Court recognizes that Defendant's efforts of engagement with prison staff, fellow inmates, and family demonstrate his ability to reintegrate into the community, weighing in favor of relief.

Significantly, Defendant has also never been convicted of any violent crime, and has not been involved in any violent incident during his period of incarceration. Defendant has serious mobility issues which require him

to use either a wheelchair or walker, and as of the date he filed his Motion, he was seventy-one years of age.  Therefore, the Court determines that the nature and seriousness of any danger Defendant might pose to others or the community is minimal.

On the sum of these factors, the Court is of the opinion that the release of Defendant is not a danger to others or the community.

### E.    Section 3553(a) Factors

Pursuant to 18 U.S.C. § 3582(c)(1)(A), a court may "reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable."  18 U.S.C. § 3582.  The Court concludes that applying these sentencing factors here warrants a reduction of Defendant's sentence to time served.

In addition to the factors discussed above, the § 3553(a) sentencing factors include:

    (1) The need for the sentence imposed to, among other factors, reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct;

    (2) The kinds of sentences available;

    (3) The kinds of sentences and the sentencing range established for the applicable category of offense and defendant;

    (4) Any pertinent policy statement guidelines issued by the Sentencing Commission;

(5) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(6) The need to provide restitution to any victims of the offense.

§ 3553(a).

The Court is mindful that Defendant was sentenced to his current term of incarceration at the age of fifty-five after numerous previous drug convictions and in violation of the terms of his parole.  The Court also recognizes Defendant's status as a career offender and his leadership role in a criminal enterprise.  By reducing Defendant's sentence, the Court in no way questions the seriousness of Defendant's criminal conduct.

Nevertheless, the Court is of the opinion that a sentence of time served would provide just punishment for Defendant's offenses. Defendant has been imprisoned for approximately seventeen years, during which his health and quality of life have significantly declined. Thus, he has been incarcerated for the remainder of the years during which he had a suitable quality of life.  Accordingly, the Court concludes that incarcerating Defendant any longer likely serves no meaningful retributive purpose.  Defendant will live out the remainder of his life with

serious, degenerative health conditions, which the Court concludes warrants compassionate release.[10]

Additionally, the Court is of the opinion that reducing Defendant's sentence to time served adequately deters similar criminal conduct and promotes respect for the law. With this order, the Court adheres to standards set forth by the USSC. These standards put defendants on notice that they will serve the full term of their sentences unless they experience serious, degenerative age-related medical conditions which significantly diminish their quality of life in their terminal years. Such a standard only allows a select number of defendants experiencing unique circumstances to obtain compassionate release, adequately deterring criminal conduct and promoting respect for the law.

The Court is also mindful that Defendant received a sentence of life imprisonment for offenses which now require a mandatory minimum sentence of twenty-five years. *See* 21 U.S.C. § 841(b)(1)(A)(2018) ("If any person commits a violation . . . of this title after 2 or more prior

---

[10] Other courts considering compassionate release pursuant to Application Note 1(B), Age of the Defendant, have made similar findings. *See Ebbers*, 2020 WL 91399, at *8 ("[H]aving reached a point where his quality of life is quite low, releasing Ebbers will not prevent him from being adequately punished nor will it discount the seriousness of his offense or diminish the message that his crimes were unacceptable.")

convictions for a serious drug felony or serious violent felony have become final, such person shall be sentenced to a term of imprisonment of not less than 25 years.")  Pursuant to the Defendant's PSR issued in 2003, Defendant's guideline imprisonment range without a mandatory life sentence was 360 months to life.  Thus, although the Court recognizes it shall not resentence Defendant pursuant to § 3582(c), the kinds of sentences now available for Defendant suggest relief might be warranted.

Finally, the Court determines that reducing Defendant's sentence to time served would not create unwarranted sentence disparities, because the Court reduces Defendant's sentence pursuant to the USSC's policy statements applicable to similarly situated defendants.  In addition, due to the nature of Defendant's crimes there are no identifiable victims who require restitution.

In sum, the Court is of the opinion that Defendant's Motion should be granted, and that a reduction in Defendant's sentence to time served is sufficient, but not greater than necessary, to accomplish the purposes of the sentencing statute.

## IV.  CONCLUSION

The Court concludes that extraordinary and compelling reasons warrant a reduction in Defendant's sentence.

Accordingly, **IT IS ORDERED** that Defendant Chester Ennis'
"Motion For Reduction in Sentence Pursuant to 18 U.S.C.
§ 3582(c)(1)(A)(i)" (ECF No. 464) is **GRANTED**.

    **IT IS FURTHER ORDERED** that Defendant Chester Ennis' term
of imprisonment shall be reduced to a term of time served as to each of
counts one (1), two (2), three (3), four (4), and nine (9) of the superceding
indictment, to be served concurrently.  The Court does not modify the
ninety-six (96) month term of imprisonment as to count six (6) of the
superceding indictment, as Defendant Chester Ennis has served a term of
imprisonment exceeding ninety-six (96) months.

    **IT IS FURTHER ORDERED** that upon release from
imprisonment, Defendant Chester Ennis shall be on supervised release for
a term of ten (10) years as to count one (1), ten (10) years as to count two
(2), eight (8) years as to count three (3), eight (8) years as to count four (4),
three (3) years as to count six (6), and eight (8) years as to count nine (9),
to be served concurrently.  While on supervised release, Defendant
Chester Ennis shall comply with the mandatory, standard, and additional
conditions of supervised release adopted by the Court in its original
"Judgment in a Criminal Case" (ECF No. 244), entered on September 2,
2003.

**IT IS FURTHER ORDERED** that all other terms and conditions in the Court's original "Judgment in a Criminal Case" (ECF No. 244) not expressly modified by this order shall remain in effect.

**IT IS FURTHER ORDERED** that the Government shall release Defendant Chester Ennis from custody immediately.  In the interest of public health, the Court will require Defendant Chester Ennis to self-isolate for fourteen days at William Ennis' home or another suitable location the Probation Office deems proper.

**IF IS FINALLY ORDERED** that the parties shall meet and confer and submit a proposed order governing the conditions of Defendant Chester Ennis' release, including his period of self-isolation, no later than **May 22, 2020**, at **5:00 p.m. Mountain Standard Time**.

**SIGNED** this **14th day** of **May, 2020**.

_____
**PHILIP R. MARTINEZ
UNITED STATES DISTRICT JUDGE**